1260

UNITED STATES TRUST COMPANY OF NEW YORK, EXECUTOR OF THE
ESTATE OF JOHN WATSON DWIGHT, PETITIONER, *v.* COMMIS-
SIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 45860.    Promulgated April 26, 1933.

*H. J. Campaign, Esq.*, for the petitioner.
*O. J. Tall, Esq.*, for the respondent.

### OPINION.

MURDOCK: The Commissioner determined the following defi-
ciencies in the tax liability of John Watson Dwight:

| | |
|---|---|
| 1925 | $23.28 |
| 1926 | 881.98 |
| 1927 | 930.03 |

Three errors are assigned: (1) That for each year certain sums
were erroneously included in income since they represented amounts
" paid to an attorney for services rendered in connection with a will
contest and pursuant to an agreement to assign said amounts to said
attorney in the event of success "; (2) the refusal to allow deduction
of the amounts paid to the attorney; and (3) the disallowance of a
deduction of $2,500, representing a debt ascertained to be worthless
and charged off in 1927.

John Watson Dwight died on December 24, 1931. The United
States Trust Company is the executor of his estate. It is a New

York corporation which has its principal place of business in New York City. The returns for the years in question were filed with the collector for the second district of New York.

On July 1, 1926, Dwight loaned $2,500 to R. H. Kinloch on the latter's demand note due three months after date. This note made no mention of interest. The debtor never paid anything on account of this loan. He was an employee of a bank in Albany. Dwight thought very highly of him. While making up his income tax return for the calendar year 1927, which return was filed on March 12, 1928, Dwight told the person assisting him that Kinloch had declined to pay the note and he was afraid he was never going to get a recovery on it. The person assisting him knew nothing about the loan but advised him to take the deduction. A deduction of $2,500 on account of this loan was claimed on the return for 1927. This deduction was disallowed by the Commissioner in determining the deficiency. The following explanation was given in the notice of deficiency:

Concerning the deduction of $2,500.00 for bad debts, you are advised that it has not been shown that the maker of the note, who was a personal friend, was in any different financial condition in 1927 than at the time of issuance of the note, July 1, 1926, or that there was reasonable expectation that the amount would be returned. The previous action taken has, therefore, been approved.

Counsel for the petitioner claims that counsel for the respondent has admitted the worthlessness of the debt in 1927, the only basis for disallowance of the deduction was that the transaction was a gift rather than a loan, and the introduction of the note proved prima facie a loan. We are unable to follow counsel in this reasoning. We know no more about the loan of $2,500 to Kinloch than is set forth in the above paragraph. Counsel for the respondent has not admitted that the debt was worthless in 1927. But if we were to assume for the moment that he did make such an admission, nevertheless, the quotation from the notice of deficiency shows clearly that the disallowance was not based solely on the ground that it was a gift rather than a loan. The Commissioner had never been shown that the financial condition of the maker of the note was any different in 1927 from what it was in 1926 when the note was given and he had not been shown that Dwight, when he made the advance, had any reasonable expectation of repayment. We are in no better position on these matters than was the Commissioner. The latter had a right to demand a satisfactory showing in this connection before allowing the deduction. We see no reason why we should require him to allow the deduction without such showing.

Emily A. Watson died testate on February 1, 1924. By the tenth paragraph of her will she left the residue of her estate to the United

States Trust Company of New York in trust to divide the same into as many shares " as there may be children of my cousin, Harvey A. Dwight, and grandchildren of my cousin, George W. Pratt, surviving at the time of my death, and to invest and keep invested one such share or portion for the benefit of each child of my said cousin, Harvey A. Dwight, and each grandchild of my said cousin, George W. Pratt, then surviving, and to pay over the income and profits therefrom to the child or grandchild " for life, and after his or her death to pay the principal and all accumulated income to his or her issue, *per stirpes*, and in default of such issue, to divide the same equally between the surviving children and grandchildren, and the issue of any who may have died, *per stirpes*. John Watson Dwight was the son of Harvey A. Dwight. He was one of seven similar beneficiaries under the above provision of the will. When the will was offered for probate it was contested by the next of kin of the decedent who were not mentioned in the will.

On March 29, 1924, Dwight entered into an agreement with an attorney named J. Noble Hayes, whereby the latter was to represent him in the will contest. This agreement provided:

* * * Dwight will pay or cause to be paid or assigned to the said J. Noble Hayes as a contingent fee for his, the said Hayes, professional services aforesaid, the sum of Seventy-Five Thousand Dollars ($75,000.00) out of any recovery of property or money or value which he may make or receive from the Estate of Emily A. Watson, Deceased, under or by virtue of the said will as the result of the said proceeding or settlement or compromise of the said contest or otherwise, to be paid as follows:

Seventy-five per cent (75%) of any accumulated income upon said Dwight's share of same which he may receive or become entitled to at the time of the settlement or final determination of the said contest, when same is received and the balance of said Seventy Five Thousand Dollars ($75,000.00) at the rate of fifty per cent (50%) of the annual income of the said Dwight from the trust established by the will for his benefit, in the United States Trust Company, until the said Seventy-Five Thousand Dollars ($75,000.00) is paid in full. It being understood that said sum is to be payable only from monies received from said Estate of Emily A. Watson.

It was further agreed that Hayes should have a lien upon Dwight's share in the estate for his fee as attorney.

The contest was settled by a payment to the contestants out of the corpus of the estate. A copy of Dwight's agreement with Hayes was filed with the trustee. The following table shows the amounts received by Hayes from the trustee pursuant to the above agreement, which amounts were deducted by Dwight in his income tax returns for the respective years:

| | |
|---|---|
| 1925 | $39, 566. 55 |
| 1926 | 28, 411. 61 |
| 1927 | 6, 700. 91 |

The Commissioner disallowed the deductions. He explained that the fees paid were not ordinary and necessary expenses of any business but were personal legal expenses to protect Dwight's rights in the income of the trust. He referred to *Helen S. Pennell*, 4 B. T. A. 1039.

The Commissioner was undoubtedly right in disallowing the deductions claimed. Section 214 (a) (1) of the Revenue Act of 1926 allows as a deduction all of the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. This includes a reasonable allowance for compensation for personal services actually rendered. But the amounts in question were not paid or incurred in carrying on any trade or business. They were personal expenses. Section 215 (a) (1) provides that no deduction shall in any case be allowed in respect of personal expenses. *Lindley* v. *Commissioner*, 63 Fed. (2d) 807; affirming 26 B. T. A. 741.

Counsel for the petitioner has abandoned the claim for these deductions and contends only that the decedent never should have included the payments in his gross income, since he had made an assignment of this property before he was entitled to receive the income. The fact is, however, that nothing was assigned on March 29, 1924. There was perhaps an agreement to make an assignment in the future upon the successful completion of the work by Hayes. Furthermore, if Dwight agreed to assign anything, that which he agreed to assign was not then an existing interest in property recognized by the law. He never agreed to part with any part of his interest in the estate or his right to distribution from the trustee. Cf. *Commissioner* v. *Field*, 42 Fed. (2d) 820. He merely agreed to pay or assign $75,000. This was to come out of his distributable share of the trust income. If Hayes had an interest in the estate he would need no lien. The petitioner relies upon *Shellabarger* v. *Commissioner*, 38 Fed. (2d) 566, but that case is different and was decided upon its peculiar facts. *Sarther Grocery Co.* v. *Commissioner*, 64 Fed. (2d) 1020.

Section 219 of the Revenue Act of 1926 provides for the taxation of the income of estates or of any kind of property held in trust, including income which is to be distributed currently by the fiduciary to the beneficiaries and income received by estates of deceased persons during the period of administration or settlement of the estate. Subsection (b) provides how the net income of the estate or trust shall be computed. Section 219 (b) (2) allows a deduction, in computing the net income of the trust, of the amount of the income of the trust for its taxable year which is to be distributed currently by the fiduciary to the beneficiaries. It further provides that " the amount so allowed as a deduction shall be included in computing the net income

of the beneficiaries whether distributed to them or not." Dwight was a beneficiary under the trust created by the will of Emily A. Watson. The deduction allowed the trust under section 219 (b) (2) undoubtedly included the amounts here in controversy, since under the will these amounts were a part of the income of the trust which was to be distributed currently by the fiduciary to Dwight. Therefore, in computing the net income of Dwight, the full amount of his distributable share of the net income of the estate should be included in his gross income. Hayes was not a beneficiary of the trust. No part of the net income of the trust was distributable to him as a beneficiary. It first had to be distributable to Dwight. Hayes was entitled to it, not because of any provision of the trust instrument, but because of services performed for and a contract with Dwight. The amount which he received was compensation to him for personal services rendered to Dwight and should have been reported as income by him. But it should have been included in his gross income, not because of section 219 (b) (2), but because it was income from his profession. Although Dwight never actually had the cash in hand, nevertheless the trustee paid it to Hayes for and on behalf of Dwight. Therefore, if receipt and use were important, there has been the equivalent of receipt and actual use. *Grace McBride Crile*, 26 B. T. A. 1020; *Houston Belt & Terminal Ry. Co.* v. *United States*, 250 Fed. 1; *Old Colony Trust Co.* v. *Commissioner*, 279 U. S. 716. But the statute says that the amount shall be included in computing Dwight's net income whether distributed to him or not. The use to which it is put is important only when considering a deduction. Thus, there is complete statutory authority for including the amounts in question in Dwight's gross income. Furthermore, it was his income. The petitioner made no mistake in including these amounts in his gross income, and since there is no reason for deducting any portion of them, they are also a part of his net income and subject to tax. Cf. *Marion Stone Burt Lansill*, 17 B. T. A. 413; affd., 58 Fed. (2d) 512; *Grace McBride Crile*, *supra*.

*Judgment will be entered for the respondent.*